IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION



UNITED STATES OF AMERICA,

Plaintiff,

v.

INDUSTRIAL EXCESS LANDFILL,
INC.; B.F. GOODRICH COMPANY;
BRIDGESTONE/FIRESTONE, INC.;
HYMAN BUDOFF; GENCORP, INC.;
GOODYEAR AEROSPACE
CORPORATION; GOODYEAR TIRE
AND RUBBER COMPANY; HYBUD
EQUIPMENT CORPORATION;
CHARLES KITTINGER; MERLE
KITTINGER; KITTINGER TRUCKING
COMPANY; MORGAN ADHESIVES
COMPANY; PPG INDUSTRIES, INC.

Defendants.

STATE OF OHIO, ex rel., JIM PETRO,
ATTORNEY GENERAL OF OHIO,

Plaintiff,

v.

INDUSTRIAL EXCESS LANDFILL,
INC., et al.,

Defendants.

CASE NOS.
5:89 CV 1988
5:91 CV 2559

JUDGE JOHN MANOS



## PARTIAL CONSENT DECREE

## TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II. JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
III. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
IV. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
V. GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . 16
VII. REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . . . . . . . . . . 23
IX. ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
X. REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . 34
XII. PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
XIII. ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
XIV. CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
XV. EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XVI. PAYMENTS FOR RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
XVII. INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
XVIII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
XIX. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
XX. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
XXI. COVENANTS NOT TO SUE BY PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
XXII. COVENANTS BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . . . . . 74
XXIV. ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
XXV. RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
XXVI. NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79
XXVII. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
XXVIII. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
XXIX. APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
XXX. COMMUNITY RELATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
XXXI. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . 84
XXXIII. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
XXXIV. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

## I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of

the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter

pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA"), 42 U.S.C. § 9607, and an amended complaint pursuant to Sections

106 and 107 of CERCLA, 42 U.S.C. §§ 9606, 9607.

B.      The United States in its amended complaint seeks, inter alia: (1) reimbursement of

costs incurred by EPA and the Department of Justice for response actions at the Industrial Excess

Landfill Superfund Site in Uniontown, Ohio, together with accrued interest; and (2) performance

of studies and response work by the defendants at the Site consistent with the National

Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C.

§ 9621(f)(1)(F), EPA notified the State of Ohio (the "State") on February 24, 1989 of

negotiations with potentially responsible parties regarding the implementation of the remedial

design and remedial action for the Site, and EPA has provided the State with an opportunity to

participate in such negotiations and be a party to this Consent Decree.

D.      The State of Ohio (the "State") has also filed a complaint against the defendants in

this Court alleging that the defendants are liable to the State under Section 107 of CERCLA, 42

U.S.C. § 9607, and O.R.C. § 3745.12, O.R.C. Chapter 3734, O.R.C. Chapter 6111, O.R.C.

Chapter 3767, and common law nuisance and common law ultrahazardous activity, for, inter alia,

reimbursement of costs incurred by Ohio in responding to contamination at the Industrial Excess

1

Landfill Superfund Site, injunctive relief, and civil penalties. The State's action has been consolidated with the United States' action.

E.       In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of the Interior on February 24, 1989, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

F.       The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the complaints, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment. The United States does not admit any liability arising out of the transactions or occurrences alleged in any type of claim (e.g., counterclaim, third party complaint) asserted against it by the Settling Defendants regardless of whether any such claim was formally served. The State does not admit any liability arising out of the transactions or occurrences alleged in any type of claim (e.g., counterclaim, third party complaint) asserted against it by the Settling Defendants regardless of whether any such claim was formally served.

G.       Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on June 10, 1986, 51 Fed. Reg. 21054, 21064.

2

H.      In response to a release or a substantial threat of a release of a hazardous

substance(s) at or from the Site, EPA commenced in 1985 a Remedial Investigation and

Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

I.      On September 30, 1987, EPA issued a preliminary Record of Decision ("ROD"),

calling for the provision of municipal water to approximately 100 homes downgradient of the

IEL Site.  On December 9, 1987, EPA issued a unilateral order under Section 106 of CERCLA,

42 U.S.C. § 9606, to a group of Potentially Responsible Parties ("PRPs"), requiring them to

design and construct the water system specified in the ROD.  After consultation with the PRPs,

EPA issued a revised unilateral order on January 29, 1988.  Several PRPs, including B.F.

Goodrich, Goodyear, and Bridgestone/Firestone, complied with the revised order.  The new

water system was completed in1991.

J.      EPA completed a Remedial Investigation ("RI") Report in July, 1988, and EPA

issued a Feasibility Study ("FS") Report on December 21, 1988.

K.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of

the completion of the FS and of the proposed plan for remedial action on December 28, 1988, in

a major local newspaper of general circulation.  EPA provided an opportunity for written and oral

comments from the public on the proposed plan for remedial action.  A copy of the transcript of

the public meeting is available to the public as part of the administrative record upon which the

Regional Administrator based the selection of the response action.

L.      The decision by EPA on the remedial action to be implemented at the Site is

embodied in a final Record of Decision ("ROD"), executed on July 17, 1989, which called for

the installation of multi-layer RCRA Subtitle C compliant cap over the surface of the landfill,

3

installation and operation of a groundwater pump-and-treat system, and expansion of the existing

methane gas venting system.

M.      On January 4, 1999, EPA proposed to amend the 1989 ROD by eliminating the

pump-and-treat system and modifying the characteristics of the landfill cap.  EPA published a

notice in local papers of general circulation, and accepted public comments on the proposed

ROD amendment through April 11, 1999.  A public meeting was held on March 1, 1999.  On

March 1, 2000, EPA signed the ROD amendment.

N.      In April, 2002, EPA again proposed to amend the ROD by eliminating the

conventional landfill cap, replacing it with a vegetative cover and monitored natural attenuation.

EPA issued a Focused Feasibility Study describing the reasons for a change in the remedy,

published a notice in local papers of general circulation, and accepted public comments on the

proposed ROD amendment through May 17, 2002.  A public meeting was held on April 17,

2002.  On September 27, 2002, EPA signed the second ROD amendment.

O.      The State concurred with EPA on the initial ROD as well as the two amendments.

Included in the ROD and the amendments are responsiveness summaries which address public

comments.  EPA published notices concerning the ROD and the two amendments in accordance

with Section 117(b) of CERCLA.

P.      On June 27, 2003, EPA issued a Unilateral Administrative Order, Docket Number

V-W-'03-C-744 (the "UAO"), to the Settling Defendants and certain other Defendants in this

action.  The UAO required the respondents to the Order to prepare the Remedial Design for the

Remedial Action selected by the ROD (as amended).  The Settling Defendants complied with the

UAO and performed the tasks required by the UAO.

Q.     On September 29, 2003, EPA approved the revised, final Remedial Design Plan submitted pursuant to the UAO by the Settling Defendants. The final Remedial Design Plan is attached as Appendix F and is incorporated into and enforceable under this Consent Decree.

R.     Based on the information presently available to EPA and the State, EPA and the State believe that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

S.     Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

T.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall

not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

### III. PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

### IV. DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the

6

meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 107.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Oversight Costs" shall mean that portion of Future Response Costs that EPA incurs, after the Effective Date, in monitoring and supervising Settling Defendant's performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including costs incurred in reviewing plans, reports and other documents submitted pursuant to this Consent Decree, as well as costs incurred in overseeing implementation of the Work; however, Future Oversight Costs do not include, inter alia: the

costs incurred by the United States pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls), XV (Emergency Response), and Paragraph 90 of Section XXI (Work Takeover), or the costs incurred by the United States in enforcing the terms of this Consent Decree, including all costs incurred in connection with Dispute Resolution pursuant to Section XIX (Dispute Resolution) and all litigation costs.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States  incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 90 of Section XXI.  Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendants have agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from October 1, 2003 to the date of entry of this Consent Decree.

"Industrial Excess Landfill Special Account" shall mean the special account established at the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. §9622(b)(3) and this Consent Decree.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between July 26, 2003 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"Municipal sewage sludge" shall mean any solid, semi-solid, or liquid residue removed during the treatment of municipal waste water or domestic sewage, and may include residue removed, all or in part, during the treatment of wastewater from manufacturing or processing operations, provided that such residue has essentially the same characteristics as residue removed during the treatment of domestic sewage.

"Municipal solid waste" shall mean household waste and solid waste collected from non-residential sources that is essentially the same as household waste.  While the composition of such wastes may vary considerably, municipal solid waste generally is composed of large volumes of non-hazardous substances (e.g., yard waste, food waste, glass, and aluminum) and can contain small amounts of other wastes as typically may be accepted in RCRA Subtitle D landfills.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Ohio EPA" shall mean the Ohio Environmental Protection Agency and any successor departments or agencies of the State.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to the removal action at the site, the 1989 ROD, the ROD amendments, this Consent Decree and the Statement of Work (SOW). O & M includes, but is not limited to, the activities begun prior to the Effective Date to control methane at the Site.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States, the State of Ohio, and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through July 26, 2003, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in Section __ of the ROD and Section __ of the SOW.

"Plaintiffs" shall mean the United States and the State of Ohio.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

10

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on July 17, 1989, and amended on March 1, 2000, and September 27, 2002 and all attachments thereto.  Unless expressly stated otherwise, references to the "ROD" in this Consent Decree refer to the ROD as amended on September 27, 2002.  The ROD as amended on September 27, 2002 is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Defendants to implement the ROD, in accordance with the SOW, the previously approved final Remedial Design Plan, the Remedial Action Work Plan and other plans approved by EPA, after reasonable opportunity for review and comment by Ohio EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 10 of this Consent Decree and approved by EPA, after reasonable opportunity for review and comment by Ohio EPA, and any amendments thereto.

"Remedial Design" shall mean those activities undertaken by the Settling Defendants pursuant to the Remedial Design Plan.

"Remedial Design Plan" shall mean the revised plan submitted pursuant to the UAO and approved by EPA on September 29, 2003, attached as Appendix F, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendix D.

"Site" shall mean the Industrial Excess Landfill Superfund Site, encompassing approximately 30 acres, located at 12646 Cleveland Avenue in Uniontown, Stark County, Ohio, and depicted generally on the map attached as Appendix C.

"State" shall mean the State of Ohio, including all of its departments, agencies, and instrumentalities, which includes without limitation Ohio EPA, the Ohio Army National Guard, the Ohio Department of Natural Resources, Ohio State Parks and Recreation, and any state natural resources trustee.

"State Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the State paid at or in connection with  the Site through March 31, 2002, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"State Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the State incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 90 of Section XXI, and O & M costs paid by the State after the Effective Date and prior to Settling Defendants' assumption of O & M as required by Section V., paragraph 6.a. State Future Response Costs shall also include all State Interim Response Costs, and all Interest on the State Past Response Costs that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from March 31, 2002 to the date of entry of this Consent Decree.

"State Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the State in connection with the Site between March 31, 2002 and the Effective Date,

including but not limited to O & M costs, or (b) incurred prior to the Effective Date but paid after that date, including but not limited to O & M costs.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities, which includes without limitation EPA, the Army, and the Postal Service, and any federal natural resources trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous waste" under O.R.C. 3734.01(J).

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5.     Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Defendants, to reimburse response costs of the Plaintiffs, and to resolve the claims of Plaintiffs against Settling Defendants and the claims of the Settling Defendants which have been or could have been

13

asserted against the United States and the State with regard to this Site as provided in this Consent Decree.

6.  **Commitments by Settling Defendants.**

    a.  Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree, after reasonable opportunity for review and comment by Ohio EPA. Settling Defendants shall also reimburse the United States for Past Response Costs and Future Response Costs and the State for State Past Response Costs and State Future Response Costs as provided in this Consent Decree. Settling Defendants shall assume responsibility for O & M at the Site within 30 days of the Effective Date. Settling Defendants also hereby dismiss any type of claim asserted against the United States with regard to this Site, regardless of whether such claim had been formally served; the dismissal shall be with prejudice, except as provided below in Paragraph 93. Settling Defendants also hereby dismiss any type of claim asserted against the State with regard to this Site, regardless of whether such claim had been formally served; the dismissal shall be with prejudice, except as provided below in Paragraph 93.

    b.  The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States and the State under this Consent Decree are joint and several. In the event of the insolvency or other failure of any one or more Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

7.    <u>Compliance With Applicable Law</u>.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA after reasonable opportunity for review and comment by Ohio EPA, shall be considered to be consistent with the NCP.

8.    <u>Permits</u>.

a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

9.     Selection of Supervising Contractor.

a.     All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by Ohio EPA. EPA, after a reasonable opportunity for review and comment by Ohio EPA, approved Sharp and Associates as the Supervising Contractor for the Remedial Design prepared pursuant to the UAO. If Settling Defendants wish to retain Sharp and Associates as the Supervising Contractor for the Work to be performed pursuant to this Consent Decree, Settling Defendants shall provide EPA and Ohio EPA with written notice of their intent to do so within 10 days after the lodging of this Consent Decree, after which EPA will issue an authorization to proceed. If at any time after the date of lodging of this Consent Decree, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA and the State and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by Ohio EPA, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree. With respect to any contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by

16

submitting a copy of the proposed contractor's Quality Management Plan (QMP).  The QMP

should be prepared in accordance with "EPA Requirements for Quality Management Plans

(QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by

EPA.

          b.     If EPA disapproves a proposed Supervising Contractor, EPA will notify

Settling Defendants in writing.  Settling Defendants shall submit to EPA and Ohio EPA a list of

contractors, including the qualifications of each contractor, that would be acceptable to them

within 30 days of receipt of EPA's disapproval of the contractor previously proposed.  EPA, after

reasonable opportunity for review and comment by Ohio EPA,  will provide written notice of the

names of any contractor(s) that it disapproves and an authorization to proceed with respect to any

of the other contractors.  Settling Defendants may select any contractor from that list that is not

disapproved and shall notify EPA and Ohio EPA of the name of the contractor selected within 21

days of EPA's authorization to proceed.

          c.     If EPA fails to provide written notice of its authorization to proceed or

disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from

meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree,

Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure)

hereof.

        10.    <u>Remedial Action</u>.

          a.     Within 30 days after the later of the Effective Date of this Consent Decree

or of EPA's issuance of an authorization to proceed pursuant to Paragraph 9, Settling Defendants

shall submit to EPA and Ohio EPA a work plan for the construction and implementation of the

Remedial Action at the Site ("Remedial Action Work Plan" or "RA Work Plan"). The RA Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and for achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications previously approved by EPA. Upon its approval by EPA, after reasonable opportunity for review and comment by Ohio EPA, the RA Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time as they submit the RA Work Plan, the Settling Defendants shall submit to EPA and Ohio EPA a Health and Safety Plan for field activities required by the RA Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

      b.     The RA Work Plan shall include plans and schedules for implementation of each task identified in the SOW.

      c.     Upon approval of the RA Work Plan by EPA, after a reasonable opportunity for review and comment by Ohio EPA, and submittal of the Health and Safety Plan for all field activities to EPA and Ohio EPA, Settling Defendants shall implement the RA Work Plan. The Settling Defendants shall submit to EPA and Ohio EPA all plans, submittals and other deliverables required under the approved RA Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA (after consultation with Ohio EPA), Settling Defendants shall not commence further RA activities at the Site prior to approval of the RA Work Plan.

11.     The Settling Defendants shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

12.     <u>Modification of the SOW or Related Work Plans</u>.

        a.      If EPA, after reasonable opportunity for review and comment by Ohio EPA, determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

        b.      For the purposes of this Paragraph <u>12</u> and Paragraphs <u>48</u> and <u>49</u> only, the "scope of the remedy selected in the ROD" is: augmenting the existing vegetative cover at the site; monitored natural attenuation of ground water contaminants both on-site and off-site to meet ARARs; long-term monitoring of ground water contamination and addressing off-site migration of ground water contaminants, if any; operation and maintenance of a gas venting system at the site and long-term monitoring of landfill gas; establishment of appropriate deed restrictions; maintenance of site fencing; maintenance of existing alternate water supply; and additional design studies as specified in the ROD, with implementation of actions called for by such studies.

        c.      If Settling Defendants object to any modification determined by EPA, after reasonable opportunity for review and comment by Ohio EPA, to be necessary pursuant to this

Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 66 (record review). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

   d.  Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

   e.  Nothing in this Paragraph shall be construed to limit EPA's or Ohio EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

  13.  Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, the Remedial Design Plan or the Remedial Action Work Plan constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

  14. a.  Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA and Ohio EPA Project Coordinators of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

   (1)  The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped;

(3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation.  The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)     The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Paragraph 16.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.     Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440.  Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. REMEDY REVIEW

15.     Periodic Review.  Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.  The State may participate in such review or conduct its own review.

16.     EPA Selection of Further Response Actions.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select,

21

after reasonable opportunity for review and comment by Ohio EPA, further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

17.   <u>Opportunity To Comment</u>.  Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

18.   <u>Settling Defendants' Obligation To Perform Further Response Actions</u>.  If EPA selects further response actions for the Site, the Settling Defendants shall undertake such further response actions to the extent that the reopened conditions in Paragraph <u>83</u> or Paragraph <u>84</u> (United States' reservations of liability based on unknown conditions or new information) are satisfied.  Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph <u>83</u> or Paragraph <u>84</u> of Section XXI (Covenants Not To Sue by Plaintiffs) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph <u>66</u> (record review).

19.   <u>Submissions of Plans</u>.  If Settling Defendants are required to perform the further response actions pursuant to Paragraph <u>18</u>, they shall submit a plan for such work to EPA and Ohio EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA, after

reasonable opportunity for review and comment by Ohio EPA, in accordance with the provisions of this Decree.

## VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

20.     Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), Region 5 Instructions on the Preparation of a Superfund Quality Assurance Project Plan, Revision 0, May 2000, and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by Ohio EPA, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree. Settling Defendants shall ensure that EPA and Ohio EPA personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform

23

all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by Ohio EPA, the Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP- approved methods.  Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program.  Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements.  Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

21.     Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA and Ohio EPA or their authorized representatives.  Settling Defendants shall notify EPA and Ohio EPA not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA and Ohio EPA shall have the right to take

24

any additional samples that EPA or Ohio EPA deem necessary. Upon request, EPA and Ohio

EPA shall allow the Settling Defendants to take split or duplicate samples of any samples they

take as part of the Plaintiffs' oversight of the Settling Defendants' implementation of the Work.

22.     Settling Defendants shall submit to EPA and Ohio EPA 3 copies of the results of

all sampling and/or tests or other data obtained or generated by or on behalf of Settling

Defendants with respect to the Site and/or the implementation of this Consent Decree unless

EPA, after consultation with Ohio EPA, agrees otherwise.

23.     Notwithstanding any provision of this Consent Decree, the United States and the

State hereby retain all of their information gathering and inspection authorities and rights,

including enforcement actions related thereto, under CERCLA, RCRA and any other applicable

statutes or regulations.

IX. ACCESS AND INSTITUTIONAL CONTROLS

24.     If the Site, or any other property where access and/or land/water use restrictions

are needed to implement this Consent Decree, is owned or controlled by any of the Settling

Defendants, such Settling Defendants shall:

a.      commencing on the date of lodging of this Consent Decree, provide the

United States, the State, and their representatives, including EPA and its contractors and Ohio

EPA and its contractors,  with access at all reasonable times to the Site, or such other property,

for the purpose of conducting any activity related to this Consent Decree including, but not

limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States or
the State;

(3)     Conducting investigations relating to contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 95 of this Consent Decree;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Defendants' compliance with this Consent Decree; and

(10)    Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.      commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  Such restrictions include, but are not limited to, (I) a covenant not to extract, consume, expose, or use in any way the ground water underlying the Site without the prior written approval of U.S. EPA; (ii) a covenant not to undertake any type of excavation on the Site without the prior written approval of U.S. EPA; and (iii) a covenant not to allow any residential use of the Site.

        c.      execute and record in the Recorder's Office of Stark County, State of Ohio,

an easement, running with the land, that (i) grants a right of access for the purpose of conducting

any activity related to this Consent Decree including, but not limited to, those activities listed in

Paragraph 24.a of this Consent Decree, and (ii) grants the right to enforce the land/water use

restrictions listed in Paragraph 24.b of this Consent Decree, or other restrictions that EPA, after

reasonable opportunity for review and comment by Ohio EPA, determines are necessary to

implement, ensure non-interference with, or ensure the protectiveness of the remedial measures

to be performed pursuant to this Consent Decree.  Such Settling Defendants shall grant the access

rights and the rights to enforce the land/water use restrictions to the following persons:  (i) the

United States, on behalf of EPA, and its representatives, (ii) the State, on behalf of Ohio EPA,

and its representatives, (iii) the other Settling Defendants and their representatives, and (iv) other

appropriate grantees, as determined by EPA.  Such Settling Defendants shall, within 45 days of

entry of this Consent Decree, submit to EPA for review and approval with respect to such

property:

        (1)      A draft easement, in substantially the form attached hereto as
Appendix E, that is enforceable under the laws of the State of Ohio , and

        (2)      a current title insurance commitment or some other evidence of
title acceptable to EPA, which shows title to the land described in the easement to be free
and clear of all prior liens and encumbrances (except when those liens or encumbrances
are approved by EPA, after reasonable opportunity for review and comment by Ohio
EPA, or when, despite best efforts, Settling Defendants are unable to obtain release or
subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, after

reasonable opportunity for review and comment by Ohio EPA, such Settling Defendants shall

update the title search and, if it is determined that nothing has occurred since the effective date of

the commitment to affect the title adversely, record the easement with the Recorder's Office of Stark County. Within 30 days of recording the easement, such Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

25.    If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a.    an agreement to provide access thereto for Settling Defendants, as well as for the United States on behalf of EPA, and the State on behalf of Ohio EPA, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 24.a of this Consent Decree;

b.    an agreement, enforceable by the Settling Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to, those listed in Paragraph 24.b; and

28

c.      the execution and recordation in the Recorder's Office of Stark County, State of Ohio, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 24.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 24.b of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  The access rights and/or rights to enforce land/water use restrictions shall be granted to the following persons:  (i) the United States, on behalf of EPA, and its representatives, (ii) the State, on behalf of Ohio EPA, and its representatives, (iii) the Settling Defendants and their representatives, and (iv) other appropriate grantees, as determined by EPA.  Within 45 days of entry of this Consent Decree, Settling Defendants shall submit to EPA for review and approval with respect to such property:

(1)      A draft easement, in substantially the form attached hereto as Appendix E, that is enforceable under the laws of the State of Ohio, and

(2)      a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA, after reasonable opportunity for review and comment by Ohio EPA, or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, after reasonable opportunity for review and comment by Ohio EPA, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Recorder's

Office of Stark County. Within 30 days of the recording of the easement, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

26.     If (a) any access or land/water use restriction agreements required by Paragraphs 25.a or 25.b of this Consent Decree are not obtained within 45 days of the date of entry of this Consent Decree, (b) any access easements or restrictive easements required by Paragraph 25.c of this Consent Decree are not submitted to EPA in draft form within 45 days of the date of entry of this Consent Decree, or (c) Settling Defendants are unable to obtain an agreement pursuant to Paragraph 24.c.(1) or Paragraph 25.c.(1) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this consent decree within 45 days of the date of entry of this consent decree, Settling Defendants shall promptly notify the United States and the State in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 24 or 25 of this Consent Decree. The United States or the State may, as it deems appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendants shall reimburse the United States or the State in accordance with the procedures in Section XVI

(Reimbursement of Response Costs), for all costs incurred, direct or indirect, by the United States or the State in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

27.     If EPA determines, after reasonable opportunity for review and comment by Ohio EPA, that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's and Ohio EPA's efforts to secure such governmental controls.

28.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

29.     In addition to any other requirement of this Consent Decree, Settling Defendants shall submit to EPA and Ohio EPA 3 copies of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next

six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendants have proposed to EPA and Ohio EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks. Settling Defendants shall submit these progress reports to EPA and Ohio EPA by the tenth day of every month following the lodging of this Consent Decree until EPA notifies the Settling Defendants pursuant to Paragraph 49.b of Section XIV (Certification of Completion). If requested by EPA or Ohio EPA, Settling Defendants shall also provide briefings for EPA and Ohio EPA to discuss the progress of the Work.

30.     The Settling Defendants shall notify EPA and Ohio EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

31.     Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project

Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 5, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

32.     Within 20 days of the onset of such an event, Settling Defendants shall furnish to Plaintiffs a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

33.     Settling Defendants shall submit 3 copies of all plans, reports, and data required by the SOW, the Remedial Design Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendants shall simultaneously submit 3 copies of all such plans, reports and data to Ohio EPA. Upon request by EPA or Ohio EPA, Settling Defendants shall submit in electronic form all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree to the agency that made the request.

34.     All reports and other documents submitted by Settling Defendants to EPA and Ohio EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

35.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by Ohio EPA, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 30 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

36.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 35(a), (b), or (c), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 35(c) and the submission has a material defect, EPA and Ohio EPA retain their rights to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

37.    Resubmission of Plans.

a.    Upon receipt of a notice of disapproval pursuant to Paragraph 35(d),

Settling Defendants shall, within 30 days or such longer time as specified by EPA in such notice,

correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated

penalties applicable to the submission, as provided in Section XX, shall accrue during the 30-day

period or otherwise specified period but shall not be payable unless the resubmission is

disapproved or modified due to a material defect as provided in Paragraphs 38 and 39.

b.    Notwithstanding the receipt of a notice of disapproval pursuant to

Paragraph 35(d), Settling Defendants shall proceed, at the direction of EPA, to take any action

required by any non-deficient portion of the submission.  Implementation of any non-deficient

portion of a submission shall not relieve Settling Defendants of any liability for stipulated

penalties under Section XX (Stipulated Penalties).

38.    In the event that a resubmitted plan, report or other item, or portion thereof, is

disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies,

in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the

plan, report or other item. Settling Defendants shall implement any such plan, report, or item as

modified or developed by EPA, subject only to their right to invoke the procedures set forth in

Section XIX (Dispute Resolution).

39.    If upon resubmission, a plan, report, or item is disapproved or modified by EPA

due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan,

report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution

procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned

pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

40.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA after reasonable opportunity for review and comment by Ohio EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT COORDINATORS

41.     Within 20 days of lodging this Consent Decree, Settling Defendants, EPA, and Ohio EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this

36

matter.  He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

42.     Plaintiffs may designate other representatives, including, but not limited to, EPA and Ohio EPA employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300.  In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.  Nothing in this Section shall limit, expand or otherwise affect the authority of the Ohio EPA Project Coordinator under any applicable law, including Chapters 3704, 3734, 3745, 3767, and 6111 of the Ohio Revised Code and regulations adopted thereunder, to undertake actions at the Site in response to conditions which may present an immediate hazard to public health, safety, welfare or the environment.  Any disputes between the EPA Project Coordinator, on the one hand, and the Ohio EPA Project Coordinator, on the other hand, shall be resolved in accordance with the provisions of Section XIX (Dispute Resolution), below.

43.     EPA's Project Coordinator and/or the Ohio EPA Project Coordinator and the Settling Defendants' Project Coordinator will meet, at a minimum, on a monthly basis.

## XIII. ASSURANCE OF ABILITY TO COMPLETE WORK

44.     Within 30 days of entry of this Consent Decree, Settling Defendants shall

establish and maintain financial security in the amount of $7,000,000 in one or more of the

following forms:

        a.      A surety bond guaranteeing performance of the Work;

        b.      One or more irrevocable letters of credit equalling the total estimated cost

of the Work;

        c.      A trust fund;

        d.      A guarantee to perform the Work by one or more parent corporations or

subsidiaries, or by one or more unrelated corporations that have a substantial business

relationship with at least one of the Settling Defendants;

        e.      A demonstration that one or more of the Settling Defendants satisfy the

requirements of 40 C.F.R. Part 264.143(f).

45.     If the Settling Defendants seek to demonstrate the ability to complete the Work

through a guarantee by a third party pursuant to Paragraph 44.d of this Consent Decree, Settling

Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part

264.143(f). If Settling Defendants seek to demonstrate their ability to complete the Work by

means of the financial test or the corporate guarantee pursuant to Paragraph 44.d or 44.e, they

shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f)

annually, on the anniversary of the Effective Date.  In the event that EPA, after a reasonable

opportunity for review and comment by Ohio EPA, determines at any time that the financial

assurances provided pursuant to this Section are inadequate, Settling Defendants shall, within 30

days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of the other forms of financial assurance listed in Paragraph 44 of this Consent Decree.  Settling Defendants' inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

46.    If Settling Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 44 above after entry of this Consent Decree, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed. Settling Defendants shall submit a proposal for such reduction to EPA and Ohio EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by EPA after reasonable opportunity for review and comment by Ohio EPA.  In the event of a dispute, Settling Defendants may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

47.    Settling Defendants may change the form of financial assurance provided under this Section at any time, upon notice to EPA and Ohio EPA and approval by EPA after reasonable opportunity for review and comment by Ohio EPA, provided that the new form of assurance meets the requirements of this Section.  In the event of a dispute, Settling Defendants may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XIV. CERTIFICATION OF COMPLETION

48.     Completion of the Remedial Action.

     a.     Within 90 days after Settling Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been attained, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA, and Ohio EPA. If, after the pre-certification inspection, the Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been attained, they shall submit a written report requesting certification to EPA for approval, with a copy to Ohio EPA for review and comment, pursuant to Section XI (EPA Approval of Plans and Other Submissions) within 30 days of the inspection. In the report, a registered professional engineer and the Settling Defendants' Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity to review and comment by Ohio EPA, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify

Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 12.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA, with a copy to Ohio EPA for review and comment, for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

        b.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by Ohio EPA, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiffs). Certification of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

49.    Completion of the Work.

a.    Within 90 days after Settling Defendants conclude that all phases of the Work (including O & M), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA, and Ohio EPA. If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by Ohio EPA, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 12.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA, with a copy

42

to Ohio EPA for review and comment, for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

        b.     If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants and after a reasonable opportunity for review and comment by Ohio EPA, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

## XV. EMERGENCY RESPONSE

50.     In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 51, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator and Ohio EPA's Project Coordinator, or, if either of the Project Coordinators is unavailable, the respective Alternate Project Coordinator. If neither EPA's Project Coordinator nor EPA's Alternate Project Coordinator is available, the Settling Defendants shall notify the EPA Emergency Response Unit, Region 5. If neither Ohio EPA's Project Coordinator nor Ohio EPA's Alternate Project Coordinator is available, the Settling Defendants shall notify the Ohio EPA Emergency Response Unit. Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the

43

Contingency Plans, and any other applicable plans or documents developed pursuant to the

SOW. In the event that Settling Defendants fail to take appropriate response action as required

by this Section, and EPA or, as appropriate, Ohio EPA takes such action instead, Settling

Defendants shall reimburse EPA and the State all costs of the response action not inconsistent

with the NCP pursuant to Section XVI (Payments for Response Costs).

     51.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to

limit any authority of the United States, or the State, a) to take all appropriate action to protect

human health and the environment or to prevent, abate, respond to, or minimize an actual or

threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action,

or seek an order from the Court, to protect human health and the environment or to prevent,

abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from

the Site, subject to Section XXI (Covenants Not to Sue by Plaintiffs).

## XVI. PAYMENTS FOR RESPONSE COSTS

     52.     <u>Payments for Past Response Costs and State Past Response Costs.</u>

     a.     Within 30 days of the Effective Date, Settling Defendants shall pay to

EPA $17,925,000 in payment for Past Response Costs. Payment shall be made by FedWire

Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with

current EFT procedures, referencing USAO File Number 1987V23778, EPA Site/Spill ID

Number 05-W2, and DOJ Case Number 90-11-3-247A. Payment shall be made in accordance

with instructions provided to the Settling Defendants by the Financial Litigation Unit of the

United States Attorney's Office for the Northern District of Ohio following lodging of the

Consent Decree.  Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

      b.     At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

      c.     Of the total amount to be paid by Settling Defendants pursuant to Subparagraph 52.a, $15,375,000 shall be deposited in the Industrial Excess Landfill Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      d.     Within 30 days of the Effective Date, Settling Defendants shall pay to the State $875,000 in payment of State Past Response Costs.  Payments shall be made as set forth in subparagraphs (1) and (2) and shall be in the form of certified or cashier's checks made payable to "Treasurer, State of Ohio".

        (1)     Payment in the amount of $870,000 shall be sent to the Fiscal Officer, Ohio EPA, P.O. Box 1049, Columbus, Ohio 43216-1049, ATTN: IEL Site.

        (2)     Payment in the amount of $5,000 shall be sent to Jena Suhadolnik, Administrative Assistant, or her successor at the Office of the Attorney General of Ohio, Environmental Enforcement Section, 30 East Broad Street, 25th Floor, Columbus, Ohio 43215-3400.

Settling Defendants shall send a copy of the transmittal letter and a copy of the checks to the Fiscal Officer, DERR, Ohio EPA, P.O. Box 1049, Columbus, Ohio 43216-1049, ATTN: Patricia Campbell or her successor, to the Ohio EPA Project Coordinator, and the Assistant Attorney General representing the State in this case.

53.     Payments for Future Response Costs and State Future Response Costs.

     a.     Settling Defendants shall pay to EPA (1) all Future Oversight Costs up to but not exceeding a cumulative total of $700,000, and (2) all other Future Response Costs not inconsistent with the National Contingency Plan. On a periodic basis the United States will send Settling Defendants a bill requiring payment. Each bill will state how much, if any, of the amount billed constitutes Future Oversight Costs and will includes an Itemized Cost Summary and, if applicable, a DOJ Cost Summary. Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 54. Settling Defendants shall make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 05-W2, and DOJ Case Number 90-11-3-247A. Settling Defendants shall send the check(s) to: U.S. EPA, Superfund Accounting, P.O. Box 70753, Chicago, Illinois 60673.

     b.     At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

     c.     The total amount to be paid by Settling Defendants pursuant to Subparagraph 53.a shall be deposited in the EPA Hazardous Substance Superfund.

     d.     Settling Defendants shall reimburse the State for all State Future Response Costs not inconsistent with the National Contingency Plan. The State will send Settling Defendants a bill requiring payment that includes a State Cost Summary (including direct and indirect costs incurred by the State and its contractors) on a periodic basis. Settling Defendants

shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring

payment, except as otherwise provided in Paragraph 54. The Settling Defendants shall make all

payments to the State required by this Paragraph in the manner described in Paragraph 52.d.

      54.    Contested Future Response Costs and State Future Response Costs

      a.   Settling Defendants may contest payment of any Future Response Costs under

Paragraph 53 if they determine that the United States has made an accounting error or if they

allege that a cost item that is included represents costs that are inconsistent with the NCP. Such

objection shall be made in writing within 30 days of receipt of the bill and must be sent to the

United States pursuant to Section XXVI (Notices and Submissions). Any such objection shall

specifically identify the contested Future Response Costs and the basis for objection. In the

event of an objection, the Settling Defendants shall within the 30 day period pay all uncontested

Future Response Costs to the United States in the manner described in Paragraph 53.

Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a

federally-insured bank duly chartered in the State of Ohio and remit to that escrow account funds

equivalent to the amount of the contested Future Response Costs. The Settling Defendants shall

send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the

transmittal letter and check paying the uncontested Future Response Costs, and a copy of the

correspondence that establishes and funds the escrow account, including, but not limited to,

information containing the identity of the bank and bank account under which the escrow account

is established as well as a bank statement showing the initial balance of the escrow account.

Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate

the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States

prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 53. If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 53; Settling Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

    b.  Settling Defendants may contest payment of any State Future Response Costs under Paragraph 53 if they determine that the State has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the State pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested State Future Response Costs and the basis for objection. In the event of an objection, the Settling Defendants shall within the 30 day period pay all uncontested State Future Response Costs to the State in the manner described in Paragraph 53. Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Ohio and remit to that escrow account funds equivalent to the amount of the contested State Future Response Costs. The Settling Defendants shall send to the State, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested State Future Response Costs, and a copy of

48

the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution).  If the State prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued interest) to the State, in the manner described in Paragraph 53.  If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the State in the manner described in Paragraph 53; Settling Defendants shall be disbursed any balance of the escrow account.  The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the State for State Future Response Costs.

  55. In the event that the payments required by Subparagraph 52.a or Subparagraph 52.d are not made within 30 days of the Effective Date or the payments required by Paragraph 53 are not made within 30 days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the unpaid balance.  The Interest to be paid under this Paragraph on the payments required by Paragraph 52 shall begin to accrue on the Effective Date.  The Interest on Future Response Costs and State Future Response Costs shall begin to accrue on the date of the bill.  The Interest shall accrue through the date of the Settling Defendants' payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions

available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 79. The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 53.

XVII. INDEMNIFICATION AND INSURANCE

56.     Settling Defendants' Indemnification of the United States and the State.

a.      The United States and the State do not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Settling Defendants shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Defendants agree to pay the United States and the State all costs they incur including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. Neither the United States nor the State shall be held

out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States or the State.

        b.     The United States and the State shall give Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 56, and shall consult with Settling Defendants prior to settling such claim.

    57.    Settling Defendants waive all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

    58.    No later than 15 days before commencing any on-site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 48.b of Section XIV (Certification of Completion), comprehensive general liability insurance with limits of three million dollars, combined single limit, and automobile liability insurance with limits of one million dollars, combined single limit, naming the United States and the State as additional insureds. In addition,

for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that

their contractors or subcontractors satisfy, all applicable laws and regulations regarding the

provision of worker's compensation insurance for all persons performing the Work on behalf of

Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work

under this Consent Decree, Settling Defendants shall provide to EPA and Ohio EPA certificates

of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such

certificates and copies of policies each year on the anniversary of the Effective Date. If Settling

Defendants demonstrate by evidence satisfactory to EPA and Ohio EPA that any contractor or

subcontractor maintains insurance equivalent to that described above, or insurance covering the

same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling

Defendants need provide only that portion of the insurance described above which is not

maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

59.     "Force majeure," for purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of the Settling Defendants, of any entity controlled by

Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the

performance of any obligation under this Consent Decree despite Settling Defendants' best efforts

to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to

fulfill the obligation" includes using best efforts to anticipate any potential force majeure event

and best efforts to address the effects of any potential force majeure event (1) as it is occurring

and (2) following the potential force majeure event, such that the delay is minimized to the

greatest extent possible.  "Force Majeure" does not include financial inability to complete the

Work or a failure to attain the Performance Standards.

60.     If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a force majeure event, the

Settling Defendants shall notify orally EPA's Project Coordinator and Ohio EPA's Project

Coordinator or, in his or her absence, EPA's Alternate Project Coordinator and Ohio EPA's

Project Coordinator's Supervisor or, in the event both of EPA's designated representatives are

unavailable, the Director of the Superfund Division, EPA Region 5, within three days of when

Settling Defendants first knew that the event might cause a delay.  Within seven days thereafter,

Settling Defendants shall provide in writing to EPA and Ohio EPA an explanation and

description of the reasons for the delay; the anticipated duration of the delay; all actions taken or

to be taken to prevent or minimize the delay; a schedule for implementation of any measures to

be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants'

rationale for attributing such delay to a force majeure event if they intend to assert such a claim;

and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or

contribute to an endangerment to public health, welfare or the environment.  The Settling

Defendants shall include with any notice all available documentation supporting their claim that

the delay was attributable to a force majeure.  Failure to comply with the above requirements

shall preclude Settling Defendants from asserting any claim of force majeure for that event for

the period of time of such failure to comply, and for any additional delay caused by such failure.

Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants,

any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

61.    If EPA, after a reasonable opportunity for review and comment by Ohio EPA, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by Ohio EPA, for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  If EPA, after a reasonable opportunity for review and comment by Ohio EPA, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision.  If EPA, after a reasonable opportunity for review and comment by Ohio EPA, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

62.    If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of

Paragraphs 59 and 60, above.  If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA, Ohio EPA, and the Court.

XIX. DISPUTE RESOLUTION

63.  Dispute Resolution Mechanisms

a.  Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree, including without limitation disputes between the United States and the State.  However, the procedures set forth in this Section shall not apply to actions by the United States or the State to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

b.  State disputes over whether an ARAR should be waived by EPA under the Consent Decree and pursuant to CERCLA Section 121(d)(4), 42 U.S.C. § 9621(d)(4) shall be subject to a substantial evidence test under CERCLA Section 121(f)(2)(B), 42 U.S.C. § 9621(f)(2)(B).  For purposes of Paragraphs 64 through 67, the State shall have the same rights, obligations, and limitations as prescribed for Settling Defendants in those Paragraphs.

64.  Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when any of the Parties (the "Disputing Party(ies)") sends the other Parties a written Notice of Dispute.

55

65.    Statements of Position.

a.    In the event that the parties to the dispute cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 14 days after the conclusion of the informal negotiation period, the Disputing Party(ies) invoke(s) the formal dispute resolution procedures of this Section by serving on the other Parties a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Disputing Party(ies).  The Statement of Position shall specify the Disputing Party(ies)' position as to whether formal dispute resolution should proceed under Paragraph 66 or Paragraph 67.

b.    Within 30 days after receipt of the Disputing Party(ies)' Statement of Position, EPA will serve on the Disputing Parties its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 66 or 67.  Within 14 days after receipt of EPA's Statement of Position, the Disputing Party(ies) may submit a Reply.

c.    If there is disagreement between EPA and any other Party as to whether dispute resolution should proceed under Paragraph 66 or 67, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if the Disputing Party(ies) ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 66 and 67.

56

66.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.     The Director of the Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 66.a. This decision shall be binding upon the Parties, subject only to the right to seek judicial review pursuant to Paragraph 66.c and d.

c.     Any administrative decision made by EPA pursuant to Paragraph 66.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Disputing Party(ies) with the Court and served on all Parties within 10 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the

dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States and the other Parties may file a response to Disputing Party(ies)' motion.

        d.    In proceedings on any dispute governed by this Paragraph, the Disputing Parties shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 66.a.

67.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

        a.    Following receipt of the Disputing Party(ies)' Statement of Position submitted pursuant to Paragraph 65, the Director of the Superfund Division, EPA Region 5, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on the Disputing Party(ies) unless, within 10 days of receipt of the decision, the Disputing Party(ies) file with the Court and serve on the Parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to the Disputing Party(ies)' motion.

        b.    Notwithstanding Paragraph M of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

68.     The invocation of formal dispute resolution procedures under this Section shall

not extend, postpone or affect in any way any obligation of the Settling Defendants under this

Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated

penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed

pending resolution of the dispute as provided in Paragraph 77.  Notwithstanding the stay of

payment, stipulated penalties shall accrue from the first day of noncompliance with any

applicable provision of this Consent Decree.  In the event that the Settling Defendants do not

prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in

Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

69.     Settling Defendants shall be liable for stipulated penalties in the amounts set forth

in Paragraphs 70 and 71 to the United States and the State, on a 50:50 basis, for failure to comply

with the requirements of this Consent Decree specified below, unless excused under Section

XVIII (Force Majeure).  "Compliance" by Settling Defendants shall include completion of the

activities under this Consent Decree or any work plan or other plan approved under this Consent

Decree identified below in accordance with all applicable requirements of law, this Consent

Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent

Decree and within the specified time schedules established by and approved under this Consent

Decree.

70.     Stipulated Penalty Amounts - Work.

a.     The following stipulated penalties shall accrue per violation per day for

any noncompliance identified in Subparagraph b. of this Paragraph:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 2,500 | 1st through 14th day |
| $ 5,000 | 15th through 30th day |
| $ 10,000 | 31st day and beyond |

b.    Subparagraph a. of this Paragraph applies to the following requirements:

(i).  submission and, if necessary, revision and resubmission of any plan, report, or other deliverable required by Section VI (Performance of the Work by Settling Defendants) or by the SOW or by any plan which is prepared pursuant to Section VI or the SOW and approved by EPA;

(ii).  any deadline imposed by Section VI (Performance of the Work by Settling Defendants) or by the SOW or by any plan which is prepared pursuant to Section VI or the SOW and approved by EPA;

(iii).  obligations imposed by Section XV (Emergency Response);

(iv).  obligations imposed by Section IX (Access and Institutional Controls);

(v).  any certification required for any submission by Settling Defendants to EPA pursuant to this Consent Decree, including both the requirement to make the certification and the requirement that the certification be truthful;

(vi).  any specific obligation that is imposed by this Consent Decree (including the SOW and any work plan approved under this Consent Decree) for implementation of the Remedial Design, Remedial Action and O&M in accordance with the ROD, the SOW, and this Consent Decree;

(vii).  modification of the SOW or related work plans pursuant to Paragraph 12, and implementation of the work called for by such modifications in accordance with the modified SOW or work plan; and

(viii).  performance of studies and investigations and further response actions pursuant to Section VII.

71.    Stipulated Penalty Amounts - Reports.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance with the requirements identified in Subparagraph b. of this Paragraph:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th day |
| $ 2,500 | 15th through 30th day |
| $ 3,000 | 31st day and beyond |

b.    Subparagraph a. of this Paragraph applies to the following requirements:

(i).  permitting split or duplicate samples and submission of reports pursuant to Section VIII (Quality Assurance, Sampling, and Data Analysis);

(ii).  designation of Settling Defendants' Project Coordinator as required by Section XII (Project Coordinators);

(iii).  obligations imposed by Section XIII (Assurance of Ability to Complete Work);

(iv).  timely submission and, if necessary, revision and resubmission of the name, title and qualifications of the proposed Supervising Contractor pursuant to Section VI;

(v).  certification of completion requirements set forth in Section XIV;

(vi).  timely notification regarding any delay or anticipated delay, consistent with Paragraph 60;

(vii).  indemnification and insurance requirements set forth in Section XVII;

(viii).  reporting requirements set forth in Section X;

(ix).  timely submission of written notification of any off-site shipment of Waste Material from the Site to an out-of-state waste management facility pursuant to Paragraph 14;

(x).  obligations imposed by Section IX (Access and Institutional Controls);

(xi).  submission of documents and other information in accordance with Section XXIV; and

(xii).  payments required by Section XVI (Payments for Response Costs).

72.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 90 of Section XXI (Covenants Not to Sue by Plaintiffs), Settling Defendants shall be liable for a stipulated penalty in the amount of $ 2,333,333.

73.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region 5, under Paragraph 66.b or 67.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

74.    Determination of Noncompliance

a.    If either EPA or Ohio EPA believes that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA and the State shall consult about whether there has been noncompliance and whether to issue notification and description of noncompliance.

b.    Upon determination of whether there has been noncompliance and whether to notify Settling Defendants of noncompliance, and consistent with Plaintiffs' determination of these issues,  EPA and Ohio EPA may give Settling Defendants written notification of the same and describe the noncompliance.  EPA and Ohio EPA may send the Settling Defendants a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA and Ohio EPA have notified the Settling Defendants of a violation.  EPA may issue the written notification and demand referred to in this section either jointly with or separately from Ohio EPA.

75.    All penalties accruing under this Section shall be due and payable to the United States and the State within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution).  All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to U.S. EPA, Superfund Accounting, P.O. Box 70753, Chicago, Illinois 60673, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #05-W2, the DOJ Case Number 90-11-3-247A, and the name and address of the party making payment.  Copies of check(s) paid pursuant to this Section, and any

accompanying transmittal letter(s), shall be sent to the United States and to the Regional

Financial Management Officer as provided in Section XXVI (Notices and Submissions).  All

payments to the State under this Section shall be paid by certified or cashier's check(s) made

payable to "Treasurer, State of Ohio", shall be mailed to the Fiscal Officer, Ohio EPA, P.O. Box

1049, Columbus, Ohio 43216-1049, ATTN: IEL Site, and shall reference the Party making

payment.  Copies of check(s) paid pursuant to this Section, and any accompanying transmittal

letter(s) shall be sent to the State as provided in Section XXVI (Notices and Submissions).

76.     The payment of penalties shall not alter in any way Settling Defendants' obligation

to complete the performance of the Work required under this Consent Decree.

77.     Penalties shall continue to accrue as provided in Paragraph 73 during any dispute

resolution period, but need not be paid until the following:

      a.     If the dispute is resolved by agreement or by a decision of EPA that is not

appealed to this Court, accrued penalties determined to be owing shall be paid to EPA and Ohio

EPA within 15 days of the agreement or the receipt of EPA's decision or order;

      b.     If the dispute is appealed to this Court and the United States or the State

prevail in whole or in part, Settling Defendants shall pay all accrued penalties determined by the

Court to be owed to EPA and the Ohio EPA within 60 days of receipt of the Court's decision or

order, except as provided in Subparagraph c below;

      c.     If the District Court's decision is appealed by any Party, Settling

Defendants shall pay all accrued penalties determined by the District Court to be owing to the

United States and the State into an interest-bearing escrow account within 60 days of receipt of

the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue,

64

at least every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and Ohio EPA or to Settling Defendants to the extent that they prevail.

78.     If Settling Defendants fail to pay stipulated penalties when due, the United States and the State may institute proceedings to collect the penalties, as well as interest.  Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 75.

79.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

80.     Notwithstanding any other provision of this Section, the United States or the State may, in its unreviewable discretion, waive any portion of stipulated penalties due to it that have accrued pursuant to this Consent Decree.

## XXI. COVENANTS NOT TO SUE BY PLAINTIFFS

81.     In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 83, 84, and 89 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106

and 107(a) of CERCLA relating to the Site.  Except with respect to future liability, these covenants not to sue by the United States shall take effect upon the receipt by EPA of the payments required by Paragraph 52.a of Section XVI (Payments for Response Costs).  With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 48.b of Section XIV (Certification of Completion).  These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

82.     In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 86, 87, and 89 of this Section, the State covenants not to sue or to take administrative action against Settling Defendants pursuant to Section 107(a) of CERCLA, Ohio Revised Code Chapters 3734, 3745, 3767, 6111 and the common law relating to the Site.  Except with respect to future liability, these covenants not to sue by the State shall take effect upon the receipt by the State of the payments required by Paragraph 52.d of Section XVI (Payments for Response Costs).  With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 48.b of Section XIV (Certification of Completion).  These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

66

83.    United States' Pre-certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants

      a.     to perform further response actions relating to the Site, or

      b.     to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

          (1)     conditions at the Site, previously unknown to EPA, are discovered, or

          (2)     information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

84.    United States' Post-certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants

      a.     to perform further response actions relating to the Site, or

      b.     to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

          (1)     conditions at the Site, previously unknown to EPA, are discovered, or

(2)     information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

85.     For purposes of Paragraph 83, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 84, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

86.     The State's Pre-certification Reservations.  Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, any right the State may have, jointly with or separate from the United States, to institute administrative action or proceedings in this action or in a new action pursuant to the State's authorities under applicable law, seeking to compel Settling Defendants

a.     to perform further response actions relating to the site or

b.     to reimburse the State for additional costs of response if, prior to Certification of Completion of Remedial Action:

        (1)     conditions at the Site, previously unknown to the State, are discovered, or

        (2)     information previously unknown to the State, is received, in whole or in part,

and the State determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health and the environment.

87.    <u>The State's Post-certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to any right the State may have, jointly with or separate from the United States, to institute administrative action or proceedings in this action or in a new action pursuant to the State's authorities under applicable law, seeking to compel Settling Defendants

        a.     to perform further response actions relating to the Site or

        b.     to reimburse the State for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

        (1)     conditions at the Site, previously unknown to the State, are discovered, or

        (2)     information, previously unknown to the State, is received, in whole or in part,

and these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

88.    For purposes of Paragraph <u>86</u>, the information and the conditions known to the State shall include only that information and those conditions known to the State as of the date

the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision. For purposes of Paragraph 87, the information and the conditions known to the State shall include only that information and those conditions known to the State as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by the State pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

89. General reservations of rights. The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiffs' covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against Settling Defendants with respect to:

a. claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based upon the Settling Defendants' ownership or operation of the Site, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants;

       d.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

       e.      criminal liability;

       f.      liability for violations of federal or state law which occur during or after implementation of the Remedial Action;

       g.      liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 12 (Modification of the SOW or Related Work Plans); and

       h.      liability for costs that the United States or the State will incur related to the Site but that are not within the definition of Future Response Costs or State Future Response Costs, respectively.

    90.    <u>Work Takeover</u>. In the event EPA, in consultation with Ohio EPA, determines that Settling Defendants have ceased implementation of any portion of the Work, are seriously or repeatedly deficient or late in their performance of the Work, or are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA, or Ohio EPA by agreement with EPA, may assume the performance of all or any portions of the Work as EPA determines necessary. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 66, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States or the State in performing the Work pursuant to this Paragraph shall be considered Future Response Costs, or

State Future Response Costs, as appropriate, that Settling Defendants shall pay pursuant to Section XVI (Payment for Response Costs).

91.    Notwithstanding any other provision of this Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS

92.    <u>Covenant Not to Sue</u>.  Subject to the reservations in Paragraph <u>93</u>, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States or the State with respect to the Site or this Consent Decree, including, but not limited to:

a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.    any claims against the United States under CERCLA Sections 107 or 113 related to the Site;

c.    any claims against the State under CERCLA Sections 107 or 113, Ohio Revised Code Chapters 3734, 3745, 3767, or 6111, or the common law related to the Site;

d.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; and

e.    any direct or indirect claim for disbursement from the Industrial Excess Landfill Special Account established pursuant to this Consent Decree.

72

Except as provided in Paragraph <u>99</u> (waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States or the State brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs <u>83</u>, <u>84</u>, <u>86</u>, <u>87</u>, <u>89</u> (b) - (d) or <u>89</u> (g) - (h), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

93.     The Settling Defendants reserve, and this Consent Decree is without prejudice to:

a.      Claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA; and

b.      Contribution claims against the United States or the State in the event any claim is asserted by the United States or the State against the Settling Defendants under the authority of or under Paragraph <u>83</u>, <u>84</u>, <u>86</u>, or <u>87</u>, but only to the same extent and for the same

matters, transactions, or occurrences as are raised in the claim of the United States or the State against Settling Defendants.

94.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

95.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

96.     The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. For purposes of the preceding sentence, the "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred by the United States, the State, or any other person with respect to the Site. The "matters addressed" in this settlement do not include claims for those response costs or response actions, or any other claims, as to which the United States and the State have reserved their rights under this Consent Decree (except for claims for failure to comply with this

Consent Decree), in the event that the United States or the State asserts rights against any or all of the Settling Defendants coming within the scope of such reservations.

97.     The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

98.     The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the United States and the State within 10 days of service of the complaint on them. In addition, Settling Defendants shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

99.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiffs).

XXIV. ACCESS TO INFORMATION

100.    Settling Defendants shall provide to EPA and the State, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

101.    Business Confidential and Privileged Documents.

        a.      Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b) or, in the case of documents submitted to the State, applicable State law. Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. Documents or information determined to be confidential by the State will be afforded the protection specified in applicable State law. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, EPA may give the public access to such documents or information without further notice to Settling Defendants. If no claim of confidentiality accompanies documents or

information when they are submitted to the State, or if the State has notified Settling Defendants

that the documents or information are not confidential under the standards of applicable State

law, the State may give the public access to such documents without further notice to Settling

Defendants.

        b.     The Settling Defendants may assert that certain documents, records and

other information are privileged under the attorney-client privilege or any other privilege

recognized by federal law.  If the Settling Defendants assert such a privilege in lieu of providing

documents, they shall provide the Plaintiffs with the following:  (1) the title of the document,

record, or information; (2) the date of the document, record, or information; (3) the name and

title of the author of the document, record, or information; (4) the name and title of each

addressee and recipient; (5) a description of the contents of the document, record, or information:

and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other

information created or generated pursuant to the requirements of the Consent Decree shall be

withheld on the grounds that they are privileged.

    102.   No claim of confidentiality or privilege shall be made with respect to any data,

including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific,

chemical, or engineering data, or any other documents or information evidencing conditions at or

around the Site.  This Paragraph is not intended to waive any otherwise valid claim of

      (1) attorney-client privilege that may apply to any communication (but not Site-related
      data) between any Settling Defendant and its attorneys or experts; or

      (2) work product privilege that may apply in connection with any document or tangible
      thing (but not Site-related data) prepared by or for any Settling Defendant or its
      representatives;

in anticipation or conduct of litigation relating to the Site between any of the Settling Defendants and parties other than the United States or the State.

## XXV.  RETENTION OF RECORDS

103.    Until 10 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 49.b of Section XIV (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site.  Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

104.    At the conclusion of this document retention period, Settling Defendants shall notify the United States and the State at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States or the State, Settling Defendants shall

deliver any such records or documents to EPA or the State.  The Settling Defendants may assert

that certain documents, records and other information are privileged under the attorney-client

privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such

a privilege, they shall provide the Plaintiffs with the following:  (1) the title of the document,

record, or information; (2) the date of the document, record, or information; (3) the name and

title of the author of the document, record, or information; (4) the name and title of each

addressee and recipient; (5) a description of the subject of the document, record, or information;

and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other

information created or generated pursuant to the requirements of the Consent Decree shall be

withheld on the grounds that they are privileged.

      105.    Each Settling Defendant hereby certifies individually that, to the best of its

knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed

or otherwise disposed of any records, documents or other information (other than identical

copies) relating to its potential liability regarding the Site since notification of potential liability

by the United States or the State or the filing of suit against it regarding the Site and that it has

fully complied with any and all EPA requests for information pursuant to Section 104(e) and

122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927

and with any and all State requests for information pursuant to State law.

## XXVI. NOTICES AND SUBMISSIONS

      106.    Whenever, under the terms of this Consent Decree, written notice is required to be

given or a report or other document is required to be sent by one Party to another, it shall be

directed to the individuals at the addresses specified below, unless those individuals or their

successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and the Settling Defendants, respectively.

<u>As to the United States:</u>

            and

<u>As to EPA:</u>

<u>As to the Regional</u>
<u>Financial Management Officer:</u>

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-11-3-247A

Director, Superfund Division
United States Environmental Protection Agency
Region 5
77 W. Jackson Boulevard
Chicago, IL 60604

Timothy J. Fischer
EPA Project Coordinator
United States Environmental Protection Agency
Region 5
77 W. Jackson Boulevard
Chicago, IL 60604

Chief, Finance
United States Environmental Protection Agency
Region 5, MF-10J
77 W. Jackson Boulevard
Chicago, IL 60604-3590

<u>As to the State</u>:

Senior Deputy, Environmental Enforcement
Section
Ohio Attorney General's Office
30 East Broad Street, 25th Floor
Columbus, Ohio 43215-3400
Re: IEL Site

and

Larry Antonelli
Ohio EPA Project Coordinator
DERR/OEPA
Northeast District Office
2110 East Aurora Road
Twinsburg, Ohio 44087


<u>As to the Settling Defendants</u>:

Timothy A. Bent
Director, Environmental Affairs
Bridgestone Americas Holding, Inc.
535 Mariott Drive
Nashville, Tenn  37214

and

Bertram Bell
Associate General Counsel
The Goodyear Tire & Rubber Company
1144 E. Market St.
Akron, OH 44316

and

Bruce Amig
Director, Global Remediation Services
Goodrich Corporation
2730 West Tyvola Road
Charlotte, NC 28271

and

Chris W. Conley
Vice President, EH&S
GenCorp Inc.
P.O. Box 537012
Sacramento, CA  95853-7012

## XXVII. EFFECTIVE DATE

107.     The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII. RETENTION OF JURISDICTION

108.     This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. APPENDICES

109.     The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the complete list of the Settling Defendants.

"Appendix E" is the model easement.

"Appendix F" is the Remedial Design Plan.

## XXX. COMMUNITY RELATIONS

110.     Settling Defendants shall propose to EPA and the State their participation in the community relations plan to be developed by EPA.  EPA, after reasonable opportunity for review and comment by Ohio EPA, will determine the appropriate role for the Settling Defendants under the Plan.  Settling Defendants shall also cooperate with EPA and the State in providing information regarding the Work to the public.  As requested by EPA or the State, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA or Ohio EPA to explain activities at or relating to the Site.

## XXXI. MODIFICATION

111.     Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendants.  All such modifications shall be made in writing.

112.     Except as provided in Paragraph 12 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Defendants, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(B)(ii).  Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.300.435(c)(2)(B)(ii), may be made by written agreement

between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendants.

113.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

114.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States and the State each reserve the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry of this Consent Decree without further notice.

115.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. SIGNATORIES/SERVICE

116.    Each undersigned representative of a Settling Defendant to this Consent Decree, the Assistant Attorney General for the Environmental Enforcement Section of the Ohio Attorney General's Office, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

117.    Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

118.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

## XXXIV. FINAL JUDGMENT

126.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree. The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

127.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and the Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS *7* DAY OF *April*, 20*05*

_____
John M. Manos
United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Industrial Excess Landfill, et al., relating to the Industrial Excess Landfill Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

5.14.04
Date

Thomas L. Sansonetti
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

5/3/04
Date

Steve C. Gold
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C.  20044-7611

Date

Stephen J. Pappas
Assistant United States Attorney
Northern District of Ohio
U.S. Department of Justice

86

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Industrial Excess Landfill, et al., relating to the Industrial Excess Landfill Superfund Site.


4-15-04
—————
Date

Richard C. Karl
Acting Director, Superfund Division
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, Illinois 60604


3/24/04
—————
Date

Timothy J. Thurlow
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, Illinois 60604

87

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Industrial Excess Landfill, et al., relating to the Industrial Excess Landfill Superfund Site.

**FOR THE STATE OF OHIO**

4/6/04
Date

Timothy J. Kern
Assistant Attorney General
Environmental Enforcement Section
State of Ohio
Office of the Attorney General
30 East Broad Street, 25th Floor
Columbus, Ohio 43215-3400

88

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Industrial Excess Landfill, et al., relating to the Industrial Excess Landfill Superfund Site.

**FOR BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC**

3-19-04
Date

Signature: _Gary H. Garfield_
Name: _Gary H. Garfield_
Title: _Vice President, General Counsel & Secretary_
Address: _535 Marriott Dr._
_Nashville, TN 37214_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _Kevin P. Holewinski_
Title: _Attorney, Jones Day_
Address: _51 Louisiana Ave. N.W_
_Washington, DC 2001_

Ph. Number: _202 879-3757_

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Industrial Excess Landfill, et al., relating to the Industrial Excess Landfill Superfund Site.

**FOR B.F. GOODRICH COMPANY**

3/8/04
Date

Signature: _Bruce Amic_
Name (print): _Bruce Amic_
Title: _Director - Global Remediation_
Address: _2730 W. Tyvola Rd_
_Charlotte, NC 28271_

_c/o Goodrich Corp_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _HEIDI GOLDSTEIN_
Title: _ATTORNEY_
Address: _THOMPSON HINE_
_3900 KEY CENTER_
_127 PUBLIC SQUARE_
Ph. Number: _CLEVELAND OH 44114_
_216 566-5500_

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Industrial Excess Landfill, et al., relating to the Industrial Excess Landfill Superfund Site.

**FOR GENCORP, INC.**

3/03/04
Date

Signature: _Chris W Conley_
Name (print): _CHRIS W CONLEY_
Title: _VP EH+S_
Address: _PO BOX 537012_
_SACRAMENTO CA_
_95853-7012_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _CHRIS W. CONLEY_
Title: _VP EH+S_
Address: _PO BOX 537012_
_SACRAMENTO CA_
_95853-7012_
Ph. Number: _916 351 8520_

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Industrial Excess Landfill, et al., relating to the Industrial Excess Landfill Superfund Site.

&

## FOR THE GOODYEAR TIRE AND RUBBER COMPANY

March 15, 2004
Date

Signature: _D E Stanley_

Name (print):  D E Stanley

Title:  Vice President

Address:  The Goodyear Tire & Rubber Company
1144 East Market Street
Akron, OH 44316-0001


Agent Authorized to Accept Service on Behalf of Above-signed Party:


Name (print):  Bertram Bell

Title:  Associate General Counsel

Address:  The Goodyear Tire & Rubber Company
1144 East Market Street
Akron, OH 44316-0001

Ph. Number:  330-796-1818

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Industrial Excess Landfill, et al., relating to the Industrial Landfill Superfund Site.

**FOR GOODYEAR AEROSPACE CORPORATION**

By The Goodyear Tire & Rubber Company ("GT&R") on behalf of Divested Aerospace Corporation ("Aerospace"), successor to Goodyear Aerospace Corporation, a former subsidiary of GT&R until May 20, 1988 and solely with respect to such subsidiary relationship until that date, provided further that the authority of GT&R to execute this Consent Decree is limited by the fact that the Corporate Charter of Aerospace was revoked on October 10, 1989 by the State of Arizona and Aerospace has no current legal existence.

March 15, 2004
Date

Signature: _D E Stanley_
Name: (print): _D E Stanley_
Title: _Vice President_
Address: _The Goodyear Tire & Rubber_ Company
_1144 East Market Street_
_Akron, OH 44316-0001_

Agent to Accept Service on Behalf of Above-signed Party:

Name (print): _Bertram Bell_
Title: _Associate General Counsel_
Address: _The Goodyear Tire & Rubber_ Company
_1144 East Market Street_
_Akron, OH 44316-0001_
Ph. Number: _330-796-1818_